UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN WARNER,

  Plaintiff,

-VS-

CITIBANK, N.A.

  Defendant.
_____/

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

1. This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit Reporting Act).

2. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

### JURISDICTION

3. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681 (p) and 28 U.S.C. 1367.

4. The Plaintiff is a natural person and resident of Hillsborough County, Florida. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Upon information and belief, Citibank, N.A. (hereinafter "Citibank"), is a corporation located at 388 Greenwich St., New York, NY 10013 and conducting business in the state of Florida.

### NATURE OF THE ACTION

1

6. The FCRA was passed by Congress in 1970 to ensure fair and accurate reporting of credit, promote efficiency in banking, and protect consumers' privacy.

7. In line with these purposes, the FCRA prohibits users of a person's credit report from obtaining consumer reports unless the user has a permissible purpose for procuring the report defined in the Statute. Specifically, §1681b(5) of the FCRA states:

> A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

8. The FCRA also prohibits users from obtaining "information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. §1681q.

9. A permissible purpose under the Statute for obtaining a credit report is for the use in connection with a credit transaction involving a consumer 15 U.S.C. §1681(a)(3)(A).

10. Importantly, the FCRA distinguishes credit reports obtained for purposes of being used in a credit transaction initiated by the consumer from those credit reports obtained for purposes of being used in a credit transaction where the transaction was not initiated by the consumer.

11. If the consumer has neither initiated a transaction nor authorized the provision of a full credit report, the procuring entity can only see limited information about the consumer. 15 U.S.C. §1681b(a)(3)(A), b(c).

12. Specifically, under §1681b(c), a user of a consumer's report who is pulling a report for the purpose of using information "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer" in a situation where no transaction was initiated may not procure an entire credit report.

13. Instead, such entity may only receive:

    (A)    the name and address of a consumer
    (B)    an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and
    (C)    other information pertaining to a consumer that does not identify the relationship of experience of the consumer with respect to a particular creditor or other entity.

15 U.S.C. §1681b(c)(2)

14. Credit inquiries from entities in circumstances where the consumer neither initiated the transaction nor provided consent for a full report procurement cannot adversely affect a consumer's credit score or impact the consumer's ability to procure future credit, because such inquiries are only viewable by the consumer. *See* 15 U.S.C. §1681b(c)(3) ("a consumer reporting agency shall not furnish to any persona  record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer.").

## HARD PULLS AND SOFT PULLS

15. In colloquial parlance, inquiries related to those transactions initiated by the consumer are known as "hard inquiries" or "hard pulls." Inquires not related to transactions initiated by the consumer are known as "soft inquiries" or "soft pulls."

16. Hard pulls are visible to third parties who obtain a consumer credit report.

17. Each hard pull can result in a credit score reduction of up to five points. *See Harkins v. Diversified Collection Servs., Inc.*, No. CIV. PJM 12-1229, 2012 WL 5928997, at *1, n. 1 (D. Md. Nov. 26, 2012).

18. In fact, it is common for creditors to use the number of hard pulls on a consumer's credit report as a basis to deny an extension or continuation of credit.

19. Soft pulls, however, are not visible to anyone other than the consumer, and do not affect the consumer's credit score. Soft pulls include inquiries made when a consumer checks his or her own credit report, inquiries made by a business with which the consumer already does business,

and inquiries made by credit card or insurance companies to make firm offers of credit when no transaction has been initiated by the consumer.

20. Soft pulls are not visible to other users of credit reports and do not affect consumers' credit scores.

## FACTUAL ALLEGATIONS

21. Plaintiff does not have an account or business relationship with Citibank.

22. On or about January 2019, Plaintiff received a solicitation through the mail from Citibank to apply for a Mastercard credit card.

23. Plaintiff, not being interested in the offer, tore up the standard mailing from Citibank offering a credit card and threw the offer in the trash.

24. Approximately a month later, on or about February 1, 2019, Plaintiff received another written correspondence from Citibank; this one however was notifying Plaintiff that his previous application for said Mastercard credit card was being declined.

25. Plaintiff, perplexed by the denial as he never applied for any such card, pulled his credit and discovered that on January 16, 2019, Citibank did a hard pull on his credit which was now showing up on both his Equifax and Experian credit reports.

26. On or about February 8, 2019, upset by Citibank's hard pull which he did not authorize and did not to adversely affect his credit, Plaintiff called Citibank at 3:41 PM and spoke to a Citibank agent known only as "JK." Plaintiff informed JK he did not authorize a hard pull and wanted it removed, JK informed Plaintiff that the information would be supplied to the fraud department and that Citibank would notify the credit reporting agencies to remove the pull.

27. As of June 5, 2019, both Equifax and Experian are still showing the January 16, 2019 impermissible hard pull of Plaintiff's credit report by Citibank.

28. Citibank acted knowingly and willfully in performing an unauthorized hard pull of Plaintiff's credit report.

29. Citibank violated clear statutory mandates under 15 U.S.C. §1681n.

30. Citibank's policy and practices created a risk substantially greater than any risk associated with mere carelessness.

31. By making a hard inquiry into the credit report of Plaintiff, Citibank has damaged Plaintiff's credit score and perceived trustworthiness. His credit score was lowered and more importantly, after the illegal pull, Citibank Denied the application hurting his reputation with Citibank and maybe other banks.

32. Plaintiff spoke with Citibank's agent and complained of the impermissible hard pull. Citibank was therefore aware of the hard credit pull not initiated by Plaintiff and has still failed to remove or rectify the mistake.

33. Plaintiff's fear of the impermissible pull by Citibank affecting his credit score has prevented him from seeking credit. Currently, Plaintiff is purposely not applying for any credit as to not to lower his credit score any further.

34. Additionally, Plaintiff has suffered damages including but not limited to stress, embarrassment, distress, aggravation, anger, worry, fear, and frustration as a result of Citibank's behavior.

<strong><u>CAUSES OF ACTION</u></strong>

<strong>COUNT I</strong><br>
<strong>(Violations of the Fair Credit Reporting Act as to Citibank)</strong>

35. The Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-four (34) as if fully set out herein.

36. Citibank pulled Plaintiff's credit history under false pretenses, because there was no valid reason for them to perform hard credit checks without authorization, and without an interaction involving a firm offer of credit in violation of 15 U.S.C. §1681q. Citibank's illegal pull lowered Claimant's credit score and has forced him to refrain from filing for other credit opportunities.

37. Citibank acted knowingly and willfully. Citibank's conduct is reflected by:

    (a) The FCRA was enacted in 1970, Citibank has had over 40 years to become compliant;

    (b) Citibank violated a clear statutory mandate set forth in 15 U.S.C. § 1681q;

    (c) Citibank knew the difference between a hard credit inquiry and a soft credit inquiry;

    (d) Citibank knew that a hard credit inquiry reduces a consumer's credit score;

    (e) Citibank systematically procures consumer information without permissible purposes despite myriad statutory text and guidance;

    (f) By adopting such a policy, Citibank voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

38. Plaintiff did not authorize Citibank to do a hard pull of his credit report.

39. Plaintiff did not initiate any credit transaction with Citibank.

40. Citibank willfully violated 15 U.S.C. §1681b(f) by willfully procuring Plaintiff's consumer report without a permissible purpose.

41. Citibank's conduct, action and inaction as willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 USC 1681o.

42. The Plaintiff is entitled to recover costs and attorney's fees from Conn's in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE,** Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against Conn Credit Corporation, Inc., to Plaintiff; award Plaintiff his attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

                          Respectfully submitted,

                        */s/ Octavio Gomez*
                        Octavio "Tav" Gomez, Esquire
                        Morgan & Morgan, Tampa, P.A.
                        One Tampa City Center
                        201 North Franklin Street, 7th Floor
                        Tampa, FL 33602
                        Florida Bar #: 0338620
                        Telephone: (813) 223-5505
                        Facsimile:  (813) 223-5402
                        tgomez@forthepeople.com
                        *Counsel for Plaintiff*